## EVA L. ELLIOTT et al., Appellants, v. LANDIS MACHINE COMPANY et al.

### Division One, July 12, 1911.

1. **LIMITATIONS: Married Women.** The ten-year Statute of Limitations is no bar to a suit by a female plaintiff who was married at the time the cause of action accrued and has continuously been covert since.

2. ————: **Trust Estate.** A suit by a *cestui que trust* against a trustee for fiduciary malfeasance, being personal in character, is barred in ten years after the cause of action accrued. Such suit is governed by Sec. 1888, R. S. 1909, which says that "actions for relief, not herein otherwise provided for" shall be barred in ten years.

3. ————: ————: **Conveyance by Trustee: Cestuis Que Trust Under Disabilities.** One who knowingly takes title to property which is subject to a trust, himself becomes a trustee *ex maleficio*, and will have to account to the beneficiaries or *cestuis que trust* for such property. The Statute of Limitations does not run against the beneficiaries under legal disabilities simply because it has fully run against their trustee who has conveyed the legal title to the parties sued by them, and who took with full knowledge of the trust impressed upon the property. So that where certificates of stock were issued to a mother as trustee for her children, and defendants bought the stock from her, with full knowledge of such trust, a suit ten years afterwards by the children, who because of legal disabilities are not otherwise barred, is not barred as to them. The principle that when the trustee is barred all the beneficiaries, whether under legal disabilities or not, are barred, has no application to such a case. That principle applies only where the trustee could sue, but fails to do so. [Distinguishing Ewing v. Shannahan, 113 Mo. 188; Walton v. Ketchum, 147 Mo. l. c. 219; Schiffman v. Schmidt, 154 Mo. 204, and Simpson v. Erisner, 155 Mo. l. c. 163.]

4. ————: ————: **Trustee Ex Maleficio.** As between *cestuis que trust* and their trustee the Statute of Limitations never can run; and where a purchaser takes the legal title of the property from such trustee, with full notice of the trust, he becomes a trustee *ex maleficio*, and takes it subject to all its burdens.

5. **TRUST: Knowledge: Patents.** Landis was the owner of certain patents, and had conveyed them to a trustee to secure the payment of $700 he owed a daughter and another. Defendants

desired those patents, and proposed that they organize a corporation and issue certificates of stock in payment therefor. A lawyer wrote to them that the matter could be arranged by issuing the amount of stock agreed upon to the wife of Landis' (who had died) to be held by her in trust for the double purpose (1) of paying the $700 in debts and (2) for holding the remainder for herself and the five children of Landis. That was done, and thereafter defendants bought the stock from Mrs. Landis, giving her $1000 therefor, and received stock in a new corporation in lieu of the stock so purchased, taking the title thereto in their own name. *Held*, that defendants bought the stock with knowledge of the existing trust, and hold five-sixths of the stock in the last corporation issued to them as trustees *ex maleficio* for the children.

6. ————: Tracing Trust Fund: Certificates in New Corporation. One-fifth of the stock of a $100,000 Illinois corporation was issued to the widow of Landis, for herself and as trustee for his five children, in payment for patents issued to him. Defendants, who owned the balance of the stock and who had organized the corporation for the purpose of using the patents in the manufacture of machines, entered into a contract with certain men in Missouri to convey to them one-half the stock of the Illinois company for money to be loaned; and to dissolve that company and organize a Missouri company of $50,000 capital to carry on the same business, and that was done, and no money was paid to the new company and the only property it had was the property and business of the old company. Defendants then bought from the widow the stock she held as trustee, and with knowledge of the trust received one-half the stock of the new company in their own name. *Held*, that the beneficiaries (the children) have sufficiently traced the trust fund into defendants' hands.

7. ————: ————: Recovery. And at the suit of the children, they should recover five-sixths of one-fifth of the stock of the new company or its market value, and of the dividends paid with interest, less whatever part of the money paid to the trustee went to extinguish a valid lien on the stock.

Appeal from St. Louis City Circuit Court.—*Hon. Jesse A. McDonald,* Judge.

REVERSED AND REMANDED *(with directions).*

· *Bond & Bond* for appellants.

(1)   The 200 shares of stock in the Landis Wax Thread Sewing Machine Co. were issued to Mrs. Landis, as trustee for the benefit of certain small creditors and then for the benefit of her children.   (2) The trust was executed by the transfer of the property, i. e., the delivery of the stock to Mrs. Landis, the trustee.   And being an executed trust, it needs no consideration to support it, and is irrevocable by the settlers.   Leeper v. Taylor, 111 Mo. 312; 1 Perry on Trusts, sec. 98; 1 Breach on Trusts and Trustees, sec. 41; 28 Am. & Eng. Ency. Law (2 Ed.), 889.   (3) The defendants are purchasers with notice.   Notice to an agent obtained in the course of his employment is notice to the principal.   Smith v. Boyd, 162 Mo. 157; Meier v. Blume, 80 Mo. 183; Hedrick v. Beeler, 110 Mo. 100; Fowler v. Randall, 99 Mo. App. 412; 2 Pomeroy's Eq. J. (2 Ed.), sec. 666; 2 Huffcutt on Agency, pp. 186-192.   (4)   A trustee has no power to sell the trust property, unless such power be conferred either by the instrument itself, or by an order of court.   28 Am. & Eng. Ency. Law (2 Ed.), 992 and 994.   (5)   One who purchases trust property from a trustee with notice of the trust, is charged with the same trust in respect to the property as the trustee from whom he purchases.   1 Perry on Trusts (5 Ed.), sec. 217, p. 314; 2 Pomeroy's Eq. J. (2 Ed.), sec. 1048; 1 Beach on Trusts and Trustees, sec. 98.   (6) ' The acquisition of the 200 shares of stock standing in the name of Mrs. Landis, was absolutely essential to enable Fleming and Dobyne to carry out their contract with Moon and his associates, which said contract resulted in a personal profit to Fleming and Dobyne.   Feld v. Invest. Co., 123 Mo. 603; 10 Cyc. 967.   (7)   Trustees occupy a position of trust and confidence, and cannot use the trust property, nor their relation to·it, for their personal advantage, and all profits so realized

belong in equity to the beneficiaries, to whom the trustee must account. 1 Perry on Trusts (5 Ed.), sec. 429; Simons v. Bank, 5 Rich. Eq. 270; Cruce v. Cruce, 81 Mo. 676; Ins. Co. v. Smith, 117 Mo. 261; Landis v. Saxton, 89 Mo. 375; Parker v. Straat, 39 Mo. App. 616. (8) The beneficiaries may follow the trust property, but the fact that the substantial property is more valuable than the original trust property does not affect the right of the *cestui que trust* to take it in place of the trust property. This is so, for otherwise, the trustee would reap a profit for himself out of the trust property. 28 Am. & Eng. Ency. Law (2 Ed.), 1110; also 1108-9-11. (9) The Statute of Limitations does not bar the suit of any of the plaintiffs in this action. It does not bar the suit of Eva Lee Elliott, Caroline Burton and Jeanette C. Weakley, because they were, and at all times since this action accrued have been, married women. R. S. 1899, sec. 4279; R. S. 1909, sec. 1894; Real Est. Co. v. Lindell, 142 Mo. 61. It does not bar the suit of Rachael Evans Bird because she did not attain the age of 21 years, until four years prior to the institution of this suit, to-wit, Sept. 29, 1903. R. S. 1899, sec. 4279; R. S. 1909, sec. 1894. Riesse v. Clarenbach, 61 Mo. 310. It does not bar the suit of Lila Landis because the ten year Statute of Limitations is the only one which could apply to this case, and she did not attain the age of 21 years until February 4, 1897, which was less than 10 years prior to the institution of this suit. R. S. 1899, sec. 4274; R. S. 1909, sec. 1888.

*Holmes, Blair & Koerner* for respondents.

The plaintiffs are barred by the Statute of Limitations. Cholmondely v. Clinton, 2 Merivale, 357; Elmendorf v. Taylor, 10 Wheat. 152; Hill on Trustees, 403; Lewin on Trusts, sec. 3, par. 14, chap. 11; Meeks v. Olpherts, 100 U. S. 564; Herndon v. Pratt,

6 Jones Eq. 327; Clayton v. Cagle, 97 N. C. 300; Wooldridge v. Bank, 1 Sneed, 297; Smile v. Biffle, 2 Barr, 52; Williams v. Otey, 8 Humph. 563; Wingfield v. Virgin, 51 Ga. 139; Brady v. Walters, 55 Ga. 25; Knorr v. Raymond, 73 Ga. 749; Molton v. Henderson, 62 Ala. 426; Walton v. Ketchum, 147 Mo. 209; Schiffman v. Smith, 154 Mo. 204; Simpson v. Erisner, 155 Mo. 157; Chase v. Cartwright, 53 Ark. 356; Wilson v. Trust Co., 102 Ky. 522.

GRAVES, P. J.—Plaintiffs state that their suit is one in equity to declare a trust and to compel an accounting. For brevity of statement, pleading and proof may best be commingled. Plaintiffs are children and heirs at law of Benjamin F. Landis, deceased. Landis was an inventor, and possessed with the idea that there could and should be a sewing machine in which could be used waxed thread, such as is used in the manufacture of harness and other leather goods. To this end he bent his energies. He obtained some patents along this line. In doing so he borrowed some money from one of his daughters, Eva Lee Elliott, and one Thomas W. Evans. The whole sum was less than one thousand dollars, i. e., seven hundred dollars. In 1886 Mr. Landis died. Thereafter defendants Fleming and Dobyne, being desirous of using the Landis patents, sought to organize and did organize a corporation under the laws of the State of Illinois, known as the Landis Wax Thread Sewing Machine Company. It should be stated here that prior to his death Landis conveyed his patents to one Charles A. Taylor, as trustee. The purpose of this instrument was to secure the debts aforesaid. When Fleming and Dobyne concluded to organize the corporation above named they set about to procure the title to the Landis patents. They were advised by W. K. James, their agent and attorney, that the legal title was in Taylor, and through him and Mrs. Elliott

and Mr. Evans the title could be perfected and pro-cured. To get these patents Fleming and Dobyne agreed to give one-fifth or twenty per cent of the capital stock of the corporation. This one-fifth amounted to 200 shares. The whole negotiations were had through their agent and attorney, Judge James of St. Joseph. Mrs. Landis and others of the family lived in St. Joseph and Fleming and Dobyne lived in Chicago. Judge James had to deal with Mrs. Landis, the widow, as well as Mrs. Elliott and Mr. Evans, the creditors. On January 9, 1891, he wrote Fleming and Dobyne, his clients, thus: "Answering yours of the 7th in re incorporation of Landis Wax Thread Sewing Machine Company issuing of stock, etc., I must say the stock coming to B. F. Landis's successors may be issued to Kate Landis who will transfer it as collateral security for what is due to Mr. Evans and Mrs. Elliott. After Payt. she Mrs. L. will hold it for all her children."

Taylor, the trustee, conveyed to Mrs. Elliott and Mr. Evans, and they in turn conveyed to the corporation aforesaid. The stock was issued to Mrs. Kate Landis, the widow. The corporation never got thoroughly upon its feet. At least it failed to make a success of marketing a machine built upon the patented ideas of Mr. Landis. In 1895, Fleming and Dobyne conceived the idea of organizing another corporation in Missouri under the same name. They had succeeded in interesting J. C. Moon, C. H. Brown and C. R. Crawford of St. Louis, Missouri, in such corporation. These parties, however, demanded that Fleming and Dobyne procure all the stock of the Illinois corporation and then surrender or cancel its charter. When this was done Moon and his friends, Brown and Crawford, were to furnish $50,000 in cash for a working capital of the new corporation, to be repaid out of the earnings of the corporation. The stock in the new corporation was to be equally divided between Fleming and Dobyne and Moon and his associates. As a

matter of fact Fleming and Dobyne each got 250 shares of stock in the new corporation, J. C. Moon 350 shares, C. H. Brown 83 shares, and C. R. Crawford 67 shares.

Before the corporation could be organized Fleming and Dobyne had to procure the outstanding stock of Mrs. Landis in the Illinois corporation. It is averred, and the evidence tends to show, that Fleming and Dobyne knew just how and in what capacity Mrs. Landis held this stock. That with such knowledge, they, by representing to her that the stock was worth but little, and withholding from her the fact that it was necessary to have this stock in order to enable them to organize the new corporation, purchased such stock for the price and sum of $1000.

It is charged that by reason of these facts Fleming and Dobyne took such stock charged with a trust; that their 500 shares in the new corporation was the outgrowth and representation of the stock in the old corporation; that the two hundred shares held in trust for plaintiffs, being one-fifth of the stock in the old corporation, purchased and paid for one-fifth or 100 shares of stock in the new company as held by Fleming and Dobyne; that said Fleming and Dobyne held such 100 shares in trust for plaintiffs and that they were not only entitled thereto but also to the dividends realized thereon, amounting to more than forty thousand dollars. As to these profits, they asked for an accounting.

The answer made by defendants can be thus outlined: Taking the answer by paragraphs, we find (1) a specific denial that the Landis Machine Company is the successor of the Landis Wax Thread Sewing Machine Company, and further a specific denial that the former company assumed any obligations whatever of the latter; (2) an admission that the plaintiffs are the sole surviving children of Benjamin F. Landis, but a further averment that they are not the sole heirs, inasmuch as the widow was yet living; (3) an

admission of the death of Benjamin F. Landis in St. Joseph, Missouri, in August, 1886, and further that he left no property, and that there has been no administrator of the estate, also that there are now no debts; (4) an admission that Benjamin F. Landis was the inventor of the various inventions set out in the petition and that letters-patent were duly issued to him therefor; (5) an admission that Benjamin F. Landis executed the instruments of conveyance to Taylor, and that Taylor conveyed to Thomas W. Evans and Eva Lee Landis, and that the effect of such conveyance was to vest a fee simple title to said letters-patent and applications in the said Thomas W. Evans and Eva Lee Landis, now Eva Lee Elliott; (6) an admission that Fleming and Dobyne did organize the original company in Illinois as charged in the petition, and did purchase for said company the patents, and in payment therefor "did cause to be issued in full payment therefor twenty thousand dollars, par value, of the stock of said company, which stock was issued, at the request and direction of said Thos. W. Evans and Eva Lee Landis, to Kate Landis, the mother of said Eva Lee Landis;" (7) a specific denial that there was an undestanding that the said stock was issued to Kate Landis in trust for the purposes mentioned in the petition, or in trust for any purpose; (8) an averment that said stock was issued to Kate Landis as her absolute property, and that prior to this suit, defendants further aver, they had no knowledge of said averred trust; (9) an admission that the individual defendants purchased the 200 shares of stock from Kate Landis for $1,000, to which admission is coupled a denial of any knowledge upon their part that the stock was held in trust by Kate Landis, but they aver that it was owned by Kate Landis, but when they purchased it they did not become trustees for plaintiffs or any other person. The remainder of the answer is short and best speaks for itself, thus:

"Defendants aver that they purchased the said stock from Kate Landis believing her to be the absolute owner thereof, and the defendants aver that she was in fact such absolute owner, and deny that she held the stock as trustee for plaintiffs or for anyone else. Defendants aver that so believing said Kate Landis to be the absolute owner of said stock they paid her therefor the sum of one thousand dollars, a sum greatly in excess of its actual value. They further aver that they have no knowledge or information sufficient to form a belief as to what the said Kate Landis did with the purchase money aforesaid.

"For further defense defendants say that the alleged cause of action set forth in the amended petition herein did not accrue to plaintiffs within five years next preceding the institution of this action.

"For a further defense defendants say that the alleged cause of action set forth in the amended petition herein did not accrue to plaintiffs within ten years next preceding the institution of this action.

"Wherefore, having fully answered, defendants pray to be hence dismissed with their costs."

Reply was a general denial.

Judgment went for defendants and plaintiffs bring the case here. Further details of the evidence will be taken with the points.

I. A preliminary question should be first settled. Defendants invoke both the five and ten-year Statute of Limitations. The purchase of the stock from Mrs. Landis was on January 1, 1895. If plaintiffs have a cause of action at all, it could not have arisen before this date. Plaintiff Eva (Landis) Burton was married September 25, 1889, and has since remained covert. Caroline (Landis) Burton was married December 4, 1890, and has since remained covert. Jeannette Childs (Landis) Weakley was married October 19, 1892, and has since remained covert. Mrs. Rachael

Evans (Landis) Bird did not marry until September 29, 1904, but she was born September 29, 1882, and therefore attained her majority September 29, 1903; at which time the statute would begin to run. Suit was filed December 11, 1906. So that, considering the coverture of the first three above named plaintiffs and the minority of the one last named, neither the five nor ten-year statute bars them. The remaining plaintiff, Lila Landis, is differently situated. She was never married. She was born February 4, 1876, and therefore reached her majority February 4, 1897. If the five-year statute should be the one applicable she is barred, but if not, she brought her suit within time under the ten-year statute. As to this plaintiff, it becomes necessary to determine which statute applies.

Section 1888, Revised Statutes 1909, formerly section 4272, Revised Statutes 1899, provides what personal actions shall be commenced within ten years. The present action is one by *cestui que trust* against a trustee. It is personal in character. The third subdivision of this ten-year statute reads: "Third, actions for relief, not herein otherwise provided for." This clause has been held to cover an action by a *cestui que trust* against a trustee. [Newton v. Rebenack, 90 Mo. App. l. c. 659.] In this case, GOODE, J., reviews the case law and reaches a conclusion couched in this language:

"In the present case, the appellant unequivocally treated the trust as extinct from the time the contract was made between him and the respondent for the purchase of real estate in his name with the fund; she was a party to that agreement; knew he bought a house and lot, taking the title to himself and holding it adversely to the beneficiaries of Neibelung's deed, and the statute began to run against her that moment.

"The question of difficulty in this connnection has been whether her right was barred in five years or whether the ten-year limitation governs. After much

reflection and the examination of such precedents as we could find, we have concluded an action of this kind falls within the intention and purpose of that clause of the limitation statute applicable to personal actions, which bars, after ten years, 'actions for relief not herein otherwise provided for.' [R. S. 1899, sec. 4272.].

"The purpose of the suit is to reinstate the trust, restore the corpus of the estate, and remove the trustee. No other provision of the limitation law appears to embrace such litigation, except the one mentioned; which does embrace it for that very reason: It is an action to obtain relief not otherwise provided for in the limitation act. A similar clause is obtained in the New York statute of limitations, and the courts of that State have treated it as designed to prescribe the period in which suits may be instituted for the redress of grievances of exclusively equitable cognizance and for which there is no concurrent remedy at law. They have construed it to be the statute applicable to actions like this one, where a *cestui que trust* invokes relief against a trustee for fiduciary misfeasance. [McTeague v. Coulter, 6 J. & S. 208; Rodman v. Devlin, 23 Hun, 590; Hoyt v. Tuthill, 33 Hun, 196; Scott v. Stebbins, 91 N. Y. 605.] The clause referred to came into our limitation law in the Code of 1855."

After so concluding, he proceeds to distinguish the case of Keeton's Heirs v. Keeton's Administrator, 20 Mo. 530, thus: "That, however, was a case of a constructive instead of an express trust created by a written instrument. Nor was the provision of the limitation law we are now considering then in force; for that suit was governed by the limitation act contained in the Code of 1825."

To our mind, the last reason is sufficient. The third clause of section 1888 was not in our Statute of Limitations at the time of the Keeton case, so that whatever be the character of his trust, under the pro-

visions of section 1888, supra, and section 1894, Re-vised Statutes 1909, these plaintiffs are within time with their action. Section 1894, supra, reads: "If any person entitled to bring an action in this article specified, at the time the cause of action accrued be either within the age of twenty-one years, or insane, or imprisoned on a criminal charge, or in execution under a sentence of a criminal court for a less term than his natural life, or a married woman, such persons shall be at liberty to bring such actions within the respective times in this article limited after such disability is removed."

As to three of them they have been under constant disability. As to the other two, they have commenced within ten years after their disability of minority was removed. Defendants however press another reason for our holding that this action is barred under even the ten-year statute, which question we take next.

II. Reverting to the other phase of the matter of limitations not discussed, supra, we gather from the briefs that defendants contend that Kate Landis, the alleged trustee, held the legal title to the property, and that she could have sued for and recovered the same; that she failed so to do for more than ten years, and for that reason the Statute of Limitations bars her, and through her bars these plaintiffs, the beneficiaries.

In support of this claim we are cited to several Missouri cases, beginning with the case of Ewing v. Shannahan, 113 Mo. 188. This action was ejectment and of course involved real estate. The facts are these: George W. Ewing deeded to his father George W. Ewing, Sr., in trust, for specific purposes in the deed named. The deed created an active, rather than a dry trust. This deed was made in 1863. Three years later, Ewing, Sr., by quitclaim deed to Ewing,

Jr., undertook to terminate the trust. By the trust, upon the death of Ewing, Jr., the property was to go to certain of his heirs. In 1867, Ewing, Jr., and wife, conveyed, for full value, the lot involved to the defendant, Shannahan, who took possession and expended some $20,000 thereon. The trust deed provided for a successor in trust. In 1872, George W. Ewing, Jr., died, leaving the plaintiff in the case named as his only heir. Young Ewing, the plaintiff, was born September 6, 1866, and brought his suit March 13, 1889. The suit was therefore brought within three years after he attained his majority. The trustee died in May, 1866, after making the quitclaim deed, supra. The creator of the trust, and father of the plaintiff, died in 1872. Upon these facts, the court held that the statute barred the plaintiff's action; that under the trust deed the legal title was vested in the trustee; that there was no power to terminate the trust reserved, and the quitclaim deed did not have that effect; that it was the duty of the trustee to protect the property for the beneficiary. Upon the Statute of Limitations, the court, through Black, J., said: "It is true the trustee died before George W. Ewing, Jr., executed the deed to the defendant; and it does not appear that Jesse Holliday ever accepted the trust or that a new trustee was ever appointed by the court as provided in the third clause of the deed of trust. But the legal title passed to the heirs of the trustee, and it does not appear that they were laboring under any disability. It became their duty to care for the property or have a new trustee appointed. Our conclusion is that the statute began to run against both the legal and equitable title when defendant took possession; that the legal and equitable titles were both barred by ten years' adverse possession, and this too though the owner of the equitable title was, during all that time, an infant. That defendant's possession has been adverse, and that too for a period of twenty

years, cannot be questioned. It is suggested that defendant purchased with knowledge of the trust, because the trust deed ·was· recorded, and that he did purchase with constructive notice must be conceded. The fact, however, that he had such notice did not prevent the Statute of Limitations from running. If that were so, the statute would cease to be one of repose. The statute will run in favor of even a wrongdoer. There can be no claim that defendant was guilty of any fraud. On the contrary, the proof shows beyond all doubt that he paid full value for the property, believing he had acquired a perfect title, and with that belief made improvements thereon to the amount of $20,000.''

The Ewing case differs from the case at bar in this: In the Ewing case, the defendant did not deal directly with the trustee. He took his conveyance from another.

The Ewing case, supra, was followed by GANTT, P. J., in Walton v. Ketchum, 147 Mo. l. c. 219, whereat it is said: "It is conceded that this adverse possession continued until the trustee was barred, and the question recurs, what effect did it have upon the beneficiaries, his children? It must now be regarded as settled in this State that when the trustee who has the legal title and sole right to sue for possession is barred, the *cestui que trust,* though·a minor or married woman, is likewise barred. [Ewing v. Shannahan, 113 Mo. 188.] That decision met the unanimous approval of this court, and decides this proposition against plaintiffs." This case, like the Ewing case, is not one involving a transaction wherein the trustee himself transferred the legal title by deed. It is not one where the trustee had dealt with the defendants.

Another case of similar tenor is Schiffman v. Schmidt, 154 Mo. 204. A short excerpt from the opinion states the case and the conclusion better than we can do. On page 213, the opinion says: "As we

have already seen, the statute did not execute the use in plaintiff, but the legal title remained in Schmidt, the trustee. It therefore clearly became his duty to protect the possession for her benefit. But it appears from the petition that he did not do so. On the contrary, he suffered the property to be sold in July, 1882, under execution issued in judgment for back taxes, and permitted defendant to take actual adverse possession of the premises in August of that year under the first tax deed, and it further appears from the averment in the petition that this adverse possession continued until the trustee was barred; and as was said by this court in the case of Walton v. Ketchum, 147 Mo. l. c. 219: 'It must now be regarded as settled in this State that when the trustee who has the legal title and the sole right to sue for possession is barred, the *cestui que trust,* though a minor or married woman, is likewise barred.' It necessarily follows that the adverse possession held under the second tax deed also bars the plaintiff's right of action.'' The plaintiff was a married woman in this case. She was covert all the time. But it will be observed that in this case there were no dealings with the trustee. The trustee did not by overt act transfer the legal title. He only suffered it to be done in a tax proceeding.

In Simpson v. Erisner, 155 Mo. l. c. 163, the following language is used: ''It is plain that if the will vested the fee in the trustees, and if the trust is an active trust, it is the duty of the trustees to protect the fee, and that if the trustees become barred by limitation, the *cestuis que trust,* even though they be minors or married women or insane persons, will also be barred. [Walton v. Ketchum, 147 Mo. l. c. 219; Schiffman v. Schmidt, 154 Mo. 204.] And the fact that the trustees resigned does not alter the principle, for it was always in the power of the *cestui que trust* to apply to a court of equity and have proper trustees appointed.'' But this case, like the cases cited there-

in, and discussed, supra, is not one where the trustee
has undertaken to convey.

The fact is that in all of the cases in this State
where the question of limitation is discussed, the ex-
act situation of the case at bar has not appeared or
been discussed. In the case at bar we have a trustee
conveying the legal title directly to the parties sued
as defendants. Not only so, but such defendants had
knowledge of the trust. They had been parties to the
creation of the trust. The question that we have to
decide, is, can the Statute of Limitations be success-
fully invoked against the beneficiaries under disabili-
ties, because it has fully run against a trustee who has
conveyed the legal title to the parties sued by the
beneficiaries, when such parties had full knowledge
of the trust? This state of facts has not been adjudi-
cated by this court. The case law is not a unit upon
the question. We are therefore left free to discuss
the question from principle. We start with the doc-
trine, that one who knowingly takes title to property
which is subject to a trust, himself becomes a trustee,
*ex maleficio.* If in the case at bar the defendants
Fleming and Dobyne knew that Mrs. Landis held this
stock in trust, and with that knowledge bought it, then
in my judgment they became trustees *ex maleficio,*
and would have to account to the beneficiaries of the
trust.

In 2 Pomeroy on Equity Jurisprudence (2 Ed.),
sec. 1048, it is said: "Wherever property, real or
personal, which is already impressed with or subject
to a trust of any kind, express or by operation of law,
is conveyed or transferred by the trustee, not in the
course of executing and carrying into effect the terms
of an express trust, or devolves from a trustee to a
third person, who is a mere volunteer, or who is a
purchaser with actual or constructive notice of the
trust, when the rule is universal that such heir, dev-

236 Sup.—36

isee, successor, or other voluntary transferee, or such
purchaser with notice, acquires and holds the property
subject to the same trust which before existed, and
becomes himself a trustee for the original beneficiary.
Equity impresses the trust upon the property in the
hands of the transferee or purchaser, compels him to
perform the trust, if it be active, and to hold the prop-
erty subject to the trust, and renders him liable to all
the remedies which may be proper for enforcing the
rights of the beneficiary. It is not necessary that such
transferee or purchaser should be guilty of positive
fraud, or should actually intend a violation of the
trust obligation; it is sufficient that he acquires prop-
erty upon which a trust is in fact impressed, and that
he is not a bona fide purchaser for a valuable consid-
eration and without notice. This universal rule forms
the protection and safeguard of the rights of benefic-
iaries in all kinds of trust; it enables them to follow
trust property—lands, chattels, funds of securities,
and even of money—as long as it can be identified,
into the hands of all subsequent holders who are not in
the position of bona-fide purchasers for value and
without notice; it furnishes all those distinctively
equitable remedies which are so much more efficient
in securing the beneficiary's rights than the mere pe-
cuniary recoveries of the law.''

In 28 Am. and Eng. Ency. Law (2 Ed.), p. 1121,
it is said: ''The *cestui que trust* can compel an ac-
counting not only from the trustee but from any per-
son holding the trust property with notice of the
trust.'' The same authority, at page 1108, *et seq.*,
says: ''The *cestui que trust* of property held by a
trustee may follow and retake it from the possession
of such trustee, or others in privity with him, and not
a bona-fide purchaser for value and without notice,
whether such property remains in the original form
or in some other substituted form, so long as it can
be ascertained to be the same property, or the product

or proceeds thereof. . . . The right to follow trust property into a new form has its basis in the right of property, and the court proceeds upon the principle that the title has not been affected by the change. . . . It is immaterial on the question of the *cestui's* right to follow trust property into the hands of a third person though it is found there in an altered form, whether the alteration is made by the trustee and the altered form is transferred to the third person, or whether the original trust property passes into the hands of the third person and is there altered . . . . The fact that the substituted form in the hands of the trustee is more valuable than the original trust property does not affect the *cestui's* right to take it in place of the trust property. He is not restricted to a mere equitable lien on the substituted property, as the trustee is not entitled to make any profit for himself out of the trust property . . . . It is ordinarily immaterial on the question of the *cestui's* right to retake, what the nature of the property is which has been substituted for the trust property. It may be land, securities or money. . . . Trust property or its substitutes may be followed and retaken when in the hands of the trustee, or his judgment creditors, agent, personal representatives, assignee for general creditors, or a receiver . . . . It may also be reclaimed when in the hands of a third person with notice of the trust, though he be a purchaser for a valuable consideration . . . . And it may be reclaimed from a third person taking without notice of the trust when he takes without value.''

That it may be reclaimed in the hand of third persons with notice, finds support in the following Missouri cases: Darling v. Potts, 118 Mo. 1. c. 529; Turner v. Hoyle, 95 Mo. 337; Barr v. Cubbage, 52 Mo. 404; Smith v. Walser, 49 Mo. 250; Coffee v. Crouch, 28 Mo. 106, and Paul v. Fulton, 25 Mo. 156.

And in the case at bar, if the purchasers knew of the trust and undertook to acquire an absolute title by inducing the trustee to assign the certificate to them, then such conduct amounts to a fraud upon the beneficiaries. The Arkansas Supreme Court in the case of Chase v. Cartright, 53 Ark. 358, adheres to the rule that the Statute of Limitations bars beneficiaries under disabilities, when the trustee is barred, but modifies its opinion by the use of this paragraph: "The rule does not apply to the claims of the *cestuis que trust* against the trustee, or against those who purchase trust property from the trustee in fraud of the trust."

So that under this holding, if Fleming and Dobyne were trying to acquire this property in fraud of the trust, then under the Arkansas rule, the statute does not bar these beneficiaries. These two defendants now claim that they bought and acquired an absolute title. It is clear the inexperience of the trustee was such that she slightly understood this or any other business matter. She was not informed that Fleming and Dobyne were to use the stock as they did use it. If, thereupon, these defendants had actual notice of the fact that the property was impressed with a trust, a question we discuss later, then their acts were in fraud of the rights of the beneficiaries. Going now to the real issue under the facts of this case, it appears to us that the cases we shall now cite establish the reasonable and proper rule as to the Statute of Limitations.

In the case of Parker v. Hall, 2 Head, l. c. 645, the Tennessee court thus speaks: "As to the Statute of Limitations, it can have no operation in the case. When the cause of action accrued, the owners of these slaves were all under the disability of infancy, and one of them was still an infant at the institution of this suit; and upon the principles of Shute v. Wade, 5 Yer. 1, all are saved from the bar. The position that

when the trustee is barred all the beneficiaries are barred, though they may be under disability, has no application here. That doctrine only applies where the trustee could sue, but fails to do so, as where a stranger intrudes himself into the trust estate and holds wrongfully, and *adversely, both to the trustee and the beneficiaries.* In such a case, if the trustee fail to sue and is barred, the beneficiaries, though infants, etc., are also barred. But here, George H. Parker, the trustee and owner of the legal estate, had estopped himself from suing by his bill of sale. He had turned against his wards, and united with the defendant in a breach of trust. The wrong *was to them, not to him.* He could not sue for, or represent them. In such a case it has been repeatedly held, by this court, since Herron v. Marshall, 5 Hum. 443, that the beneficiaries can alone sue, and if they are under disability when the cause of action accrues, they will not be barred until they are allowed the time given in the statute after the disability is removed." This plain declaration of the law to our mind comports with reason. In the Parker case, the guardian of his minor wards had sold some slaves to defendant. The slaves were sold to Parker, the guardian, by written bill of sale, which was of record, and which showed that Parker held the slaves for his children, the plaintiffs in the case supra. The lower court found for defendant. This decree was reversed and a decree entered for plaintiffs for the slaves, their increase and hire.

The same court in the more recent case of Harris v. Smith, 98 Tenn. 1. c. 293, to our mind draws the distinction which should be drawn. The court, in that case, says: "It is insisted, in opposition, that she had the power to convey, and is estopped to question the conveyance which she authorized to be made, and that she and her trustee are barred by the Statute of Limitations of seven years, and that the defendants are bona-fide innocent purchasers, without notice of

any breach of the trust or misappropriation of the proceeds. As to the Statute of Limitations, the Court of Chancery Appeals was of opinion it did not apply, inasmuch as the complainant was a married woman, and the trustee, Craighead, had, by his conveyance, estopped himself from suing. We think this is correct, under the cases cited of Herron v. Marshall, 5 Hum. 443; Parker v. Hall, 2 Head. 642; Bayless v. Elcan, 1 Cold. 99. These cases are distinguishable from cases where the trustee has not estopped himself, such as Williams v. Otey, 8 Hum. 563; Watkins v. Specht, 7 Cold. 585; Goss v. Singleton, 2 Head. 69-78; Woodward v. Boro, 16 Lea 682.''

It occurs to us that this is a clear distinction and one properly drawn. If a trustee, without power of sale, sells trust property, and the purchaser thereof knows of the character of the trust, and deals with the trust in an attempt to acquire the property stripped of the trust, at least a legal, if not an actual fraud, has been perpetrated on the *cestuis que trust*. In such case both the trustee and the purchaser have been guilty of a wrong and to my mind a legal wrong rising to the dignity of a fraud. In the case at bar, the trustee applied the surplus of the money received to her own use and benefit. No doctrine is better settled than that which maintains that if a person convey to another property for a fraudulent purpose, the grantor cannot plead his wrongful and fraudulent act in an action to recover the property from the grantee. [Brown's Admr. v. Finley, 18 Mo. 375; Hamilton v. Scull's Admr., 25 Mo. 165; Larimer v. Tyler, 88 Mo. 661.]

It occurs to us that it would be a dangerous doctrine to say that a trustee, knowing the character of the trust, but vested with the legal title, could pass that legal title to a purchaser, likewise knowing the character of the trust, and by such conveyance or by inaction or by other act, bar minor beneficiaries, who

sue within the statutory period after the disability has been removed.

To our mind the distinction drawn by the Tennessee court is well taken. In other words, if the trustee by a conveyance undertakes to convey to a purchaser the property stripped of the trust, and such purchaser takes with knowledge of the facts, then beneficiaries under disability have the right to sue within the statutory period prescribed, after disability has been removed. Such a case is different from one where the trustee has not so acted. It is different from the case of a person having some claim, who takes possession of real estate (trust property) and claims adverse possession, but in which act the trustee has not concurred by overt act. This is the distinction between the case at bar and the Missouri cases relied upon by defendants, and discussed supra. To hold that a trustee can join with a purchaser with notice, and convey the property stripped of the trust, is to open wide the door for fraud as against infant beneficiaries. We cannot subscribe to the doctrine urged by defendants. Its pernicious effects would be endless. Our court has not gone so far up to this date, as the cases cited can be clearly distinguished on the facts.

We, therefore, hold that the cause of action is not barred.

III. If Fleming and Dobyne took the property with notice of the trust, they became trustees *ex maleficio*. They took the property subject to all the burdens. As between these beneficiaries and Mrs. Landis, the trustee, the Statute of Limitations never could run. [Ewing v. Shannahan, supra.]

Let us suggest, without especially deciding, why should a court hold that the statute cannot run in a suit between the beneficiaries and the rightful trustee, and yet hold that the statute will run as between the beneficiaries and a trustee *ex maleficio*. Would there

be reason in such a holding? In the case at bar, these beneficiaries at one and the same time acquired a right of action both against the legal trustee and the trustee *ex maleficio*. Should we say one action can be barred, and the other not? If we do so say, what becomes of the general doctrine of the right to follow the trust property in the hands of third parties with notice? What becomes of the doctrine that the property and its accumulations can be recovered from third parties with notice, even though in a changed form, and such changed form has been at the hands of the trustee *ex maleficio?*

In other words, are not the legal relations between the beneficiary and the legal trustee, and the relation between the beneficiary and the trustee *ex maleficio* so closely analogous, and the substantive law applicable thereto so nearly the same, that the applicable adjective law should be the same?

IV. Concluding, as we have, that the Statute of Limitations has not run, we take next the merits of the case. In organizing the Illinois corporation, Fleming and Dobyne desired the Landis patents. To get them after the death of Landis involved the construction of a conveyance from Landis to Taylor. Fleming and Dobyne lived in Chicago. They left the matter of consummating the deal with Judge James. Mrs. Elliott and Mr. Evans had to be considered, for they had $700 secured by this instrument executed by Landis to Taylor. It is but fair to assume that Judge James took up the matter with all the parties, and the evidence, though not as full, for lapse of time, as it might be, tends to show that he did. Near the conclusion of his work in the matter, Judge James wrote to Fleming and Dobyne the letter of January 9, 1891, set out at length in the statement. This letter shows that the matter of how the stock in the corporation was to be issued and held had been discussed. The stock was

to be held in trust for a double purpose, (1) the payment of the $700 in debts, and (2) the remainder for the plaintiffs in this case. Defendants who had active charge of the promotion of the corporation were advised by this letter of the fact that Mrs. Kate Landis was a mere trustee. They issued the $20,000 in stock upon that basis. The stock then became impressed with a trust, and these defendants had full knowledge thereof. We therefore have no trouble to reach the conclusion that the original stock was a trust estate in the hands of Kate Landis as trustee, and further that Fleming and Dobyne were fully advised of the kind and character of her holding.

V. Before Fleming and Dobyne purchased this stock in the old company from Mrs. Landis, they had entered into the following agreement, with J. C. Moon and his associates:

This agreement made and entered into this 10th day of October one thousand eight hundred and ninety-four between R. S. Fleming and J. B. Dobyns, of Howard, Illinois, parties of the first part, and J. C. Moon, C. H. Brown and C. R. Crawford, of St. Louis, Missouri, parties of the second part:

Witnesseth, That the said parties of the first part do hereby agree to assign and convey to the parties of the second part certificates of stock in the Landis Wax Thread Sewing Machine Company of the City of Chicago, State of Illinois, to the extent of one-half of the capital stock; also agree to furnish two Landis wax thread sewing machines complete, all patterns, jigs, guages, forms, templets and special tools now used by them in the manufacture of said machines.

In consideration of above agreement the parties of the second part agree to furnish all the money necessary to equip the plant, manufacture and sell the machines, said money to be furnished without interest; said money to be paid back to parties of the second part after the Landis Wax Thread Sewing Machine Company shall have declared and paid their annual dividend, of ten per cent and have sufficient capital to pay it without crippling the business.

Parties of the second part to furnish factory room, power, heat, light and drayage, and all office work free of charge.

Parties of the first part agree to have charter of Landis Wax Thread Sewing Machine Company canceled in the State of

Illinois and incorporate with parties of second part in the city of St. Louis, State of Missouri.

Capital stock to be fifty thousand dollars.

Salaries for the new company to be as follows: J. B. Dobyne, twenty-two hundred dollars per annum, beginning September 1, 1894; R. S. Fleming, twenty-two hundred dollars per annum, beginning October 1, 1894; J. C. Moon, seventeen hundred dollars per annum, beginning December 1, 1894; C. H. Brown, sixteen hundred and fifty dollars per annum, beginning December 1, 1894; C. R. Crawford, sixteen hundred and fifty dollars, beginning December 1, 1894.

With the obligations of this contract to perform, they sought Mrs. Landis. They told her that they could sell an interest to Moon, but would have to have all the stock. They failed to tell her that they could use this stock in incorporating a company in Missouri bearing the name of her husband, and that they would receive a proportionate share of the new stock for the old stock which she had for her children. In this they perpetrated a fraud upon Mrs. Landis, as well as upon the beneficiaries.

Now to trace the property of the plaintiffs into the hands of defendants, this contract must be considered.

When we dissect this contract, it requires Fleming and Dobyne to do the following things: (1) To assign to Moon and associates one-half of the stock in the old company; (2) to furnish for the new corporation certain machines and devices; (3) to cancel the charter of the old company (a thing not yet done) and (4) to join Moon and associates in the incorporation of the new company in St. Louis.

Every obligation of this contract could have been carried out by them, unless it be the third, without consulting Mrs. Landis. But further going into this contract it is clear that the capital stock of the new concern was based upon the capital stock of the old. No money was put in as stock. All that was to be put in, was to be in the way of a loan. The capital stock

of the new concern was to be $50,000, and stock was so issued, but not a dollar, except the remains of the old corporation, went in to make up this capital stock. When the capital stock of the new corporation was divided, it was divided according to the holdings of the parties in the old corporation, for under the contract Moon and associates were to get half of the stock, and after the purchase from Mrs. Landis, Fleming and Dobyne had half of the stock left. No one can read this contract and this record without concluding that the stock in the old corporation formed the basis of the stock in the new. There was nothing else out of which to form this capital stock. All parties so acted, and for these years these strangers have speculated upon the name and work of Benjamin F. Landis. They cling to his name even in the changed name of the corporation. They have fattened upon the remains of the old corporation and now plead the Statute of Limitations and other things to prevent the Landis heirs, the beneficiaries of the clearly made trust, from tracing their property and its accumulations.

The decree *nisi* was for the wrong parties and should not stand. Just what the decree should be, we discuss next.

VI. If the stock in the old company formed the basis of the stock in the new, as we hold, and if Fleming and Dobyne are trustees *ex maleficio,* as we have held, then these beneficiaries of the trust estate once in the hands of Mrs. Landis, have a right to an interest in the new corporation. The only question is the nature and extent of that right. They had, subject to an indebtedness of $700, and a possible interest in the widow, one-fifth of the stock in the old corporation. Upon this basis they would be entitled to one-fifth of the stock of the new corporation into which their

trust property was converted. Not only would they be entitled to this specific stock or its value, but likewise to its earnings for the years it was held by defendants, Fleming and Dobyne. The widow is claiming no interest for herself, and if she were it is questionable whether she could so do in view of her acceptance of the original stock upon the terms indicated by the letter of Judge James, quoted supra. These defendants however have paid out $1000 on the original stock. Of this $700 went to discharge a conceded valid lien thereon. They should not be compelled to lose all of this payment. This matter should be adjusted upon an equitable basis. To that end, the cause is reversed and remanded with the following directions:

The circuit court shall enter a decree finding for the plaintiffs and further finding that they are entitled to have of and from each of the defendants Fleming and Dobyne the sum of $5000, or a total of $10,000, of the capital stock of the present defendant corporation; that the said plaintiffs further have and recover from the said Fleming and Dobyne each and all of the dividends which they have received from the stock aforesaid; that the decree should be so framed that if the stock is not turned over and delivered to plaintiffs, then such plaintiffs shall be entitled to have and recover from said Fleming and Dobyne the reasonable market value of such stock, and to this end the trial court should, if necessary, take and hear evidence upon this point; that from the amount of dividends received by Fleming and Dobyne on said stock as shown by the evidence in the present record of the case, there should be deducted the said sum of $1000 paid by Fleming and Dobyne for the original stock, together with six per cent annual interest thereon from the date of its payment to this time.

This, in our judgment, will do substantial justice in this case, and the judgment *nisi* is reversed and the cause remanded with the directions aforesaid. All concur, except *Valliant,* J., absent.

## ON MOTION FOR REHEARING.

GRAVES, P. J.—I.  We are urged to at least revise our judgment in the motion for rehearing.  It is urged that by oversight the court allowed the recovery of 200 shares of stock in the new corporation, when it should have been 100 shares.  The brief for the appellant is cited on the question.  The court had fully read the brief and the direction as to a recovery for $10,000, or one-fifth of this stock, was deliberately made.  Our views then and our views now are that Fleming and Dobyne are trustees *ex maleficio,* and as such are responsible for all that they wrongfully acquired from the Landis heirs, together with the increase and profits thereof.  They got, subject to the claim of the widow, one-fifth of the stock in the old company and this furnished the sole basis for one-fifth of the stock in the new company:  The old company was a $100,000 organization, and in it the Landis interest was $20,000, or 200 shares of $100 each.  The new corporation is a $50,000 corporation, and we have only directed a recovery for $10,000 of stock or one-fifth of the stock in the new company.  The number of shares is the same because in the old corporation the shares were $100 each and in the new only $50 each.  This part of the opinion and direction to the lower court will not be modified.

II.  It is urged that even if this be true, yet the five heirs should not recover all of such interest because the widow had an undivided one-sixth of this one-fifth interest in both of the corporations.  Upon reflection we are inclined to grant this contention

to the extent of not permitting the plaintiffs to recover more than five-sixths of this stock. That is to say, that they shall only recover five-sixths of the $10,000 in stock, together with the dividends which have been paid thereon. Not only so, but they should receive interest at 6 per cent on each dividend from the date of its payment to Fleming and Dobyne, a matter which we intended, but did not make clear in the original opinion.

III. In the above we are not undertaking to say who owns this interest of the widow, because she is not a party to this suit. What we are saying is that the children are only entitled to recover five-sixths of the interest at one time belonging to the Landis estate.

It is urged that under Mrs. Landis's testimony she held the stock for herself and the children and that she has at least parted with her share. This may be true, but we do not further indicate our views for the reasons above stated. This, however, brings up another question, i. e., what shall we do with the $1000 paid to Mrs. Landis. In her testimony it is urged that she says she was only selling her interest, and if so then we should leave out of consideration the $1000 paid. We were impressed before with the idea that from all the facts in the case she was trying to and intended to sell the whole interest, and that the purchasers were trying to buy the whole interest. Such sale was wrongful upon the part of both seller and buyer, with the admitted knowledge of the trust. The question is, therefore, what shall we do with the $1000 paid? In as much as we have limited the plaintiff's recovery as above indicated, it now occurs to us that the defendants should be allowed the $700 which went to discharge the lien on this property. We previously allowed the full $1000, but it is now insisted that we should not have allowed this. To our mind the money

of the defendants at least to the extent of $700 went to discharge a valid lien upon the property of these heirs, and they should be charged with such sum of $700 and interest thereon at the rate of six per cent to the date of the accounting heretofore directed in the original opinion.    To this extent of changing the amount from $1000 to $700, this direction of the original opinion is modified. .

With the modifications hereinabove indicated the trial court will proceed to follow out the directions heretofore given in this case.

Upon the motion for rehearing it is therefore ordered that our judgment and opinion be modified as hereinabove indicated, and that the motion be overruled.