55 P.(2d) 657

## McCALLISTER v. FARMERS DEVELOPMENT CO. et al.

### No. 4099.

Supreme Court of New Mexico.

Jan. 23, 1936.

On Rehearing March 10, 1936.

See, also, McCallister v. National Bank of New Mexico of Raton, 40 N.M. 143, 56 P.(2d) 485.

H. M. Rodrick, of Raton, for appellant.

F. S. Merriau, of Raton, and Kiker & Fernandez, of Santa Fé, for appellees.

BRICE, Justice.

This is an action in equity to enforce a trust. A demurrer was directed against the complaint and sustained by the court. The plaintiff (appellant here) stood on his complaint; and the court thereupon entered judgment for the defendant (appellee here), from which judgment this appeal was taken.

From the complaint we deduce facts sufficient to determine the case as follows:

The appellee Farmers Development Company, a corporation, was indebted in October, 1924, to the appellee National Bank of New Mexico of Raton in the sum of $3,684.58, evidenced by a promissory note in that amount. On October 15, 1924, said bank sold this note to the First National Bank of Springer, N. M., and accompanied such sale with a guaranty evidenced by a letter as follows:

"National Bank of New Mexico
"Raton, New Mexico, October 15, 1924
"Mr. C. R. Brown, First National Bank, Springer, N. M.

"Dear Mr. Brown: With reference to the note of the Farmers Development Co. sent you in our remittance yesterday, and being dated May 1st, 1924, we will guarantee payment of it, principal and interest, with the understanding that renewals or extensions will be granted by you within reasonable limits so as to give the company a chance to work out in an orderly manner.

"We will also furnish you shortly a copy of the latest financial statement submitted to us by the company.

"Yours very truly,
"Ernest Ruth, Cashier."

The payor bank renewed this note on December 17, 1924, by executing a new one in a like amount, on which renewal the following indorsement appears:

"For value received the undersigned hereby guarantees payment of the within note, waiving demand of payment, protest and notice of nonpayment.

"M. N. Mikesell."

On January 24, 1925, the Farmers Development Company was indebted to the National Bank of New Mexico in the sum of $7,500 and to various other persons in the sum of $12,451.34, which, with the debt of $3,684.58 owing to the Springer bank, made a total of $23,635.92. On that date, for the purpose of better securing the payment of all such indebtedness, it executed to the National Bank of New Mexico as trustee, its promissory note in the sum of $23,635.92, payable one year after date, and secured it by a mortgage on 220 acres of orchard land, a copy of which note and mortgage is set out in appellant's complaint. Certain conditions in the mortgage were broken, which by its terms caused the entire debt to become due. On May 18, 1925, the Springer bank sold to the appellant the note as renewed, together with the

guaranty of the National Bank of New Mexico, and transferred it to appellant with the following indorsement thereon:

"Without recourse pay to the order of J. M. McCallister.

"The First National Bank of Springer "By C. R. Brown, Cashier."

Nothing has been paid on this note except three interest payments aggregating $589.52, the last on December 17, 1926. In 1928 the appellant employed J. Leahy, attorney at law, to collect his note, who apparently took the matter up with the National Bank of New Mexico, as the vice president of that bank wrote him the following letter:

"No. 8098 National Bank of New Mexico
 "July 31, 1928

"Mr. J. Leahy, Attorney, Raton, New Mexico

"Dear Sir: With reference to the McCallister matter wish to state that we hold a mortgage on the Farmers Development Company secured by two hundred twenty acres of orchard land at Miami, for the consideration of $23,635.92, being dated January 24th, 1925, which sum includes the note of Mr. McCallister in the sum of $3,684.58. Since the date of the mortgage the amount coming under the mortgage has been reduced to $20,026.04.

"In this amount is also included note of $7,500.00 which we are carrying in the bank being ten per cent of our capital and surplus which is the limit to which we can carry any one borrower and when this note has been reduced by the profits of the sheep operations to $3,500.00 there will be nothing in the way of our taking over the note now carried by Mr. McCallister.

"As the note of Mr. McCallister is carrying the same security as the other notes it goes without saying that we will administer the security as trustee for the benefit of all the notes secured under the instrument. I advised Mr. McCallister last Saturday that the Company could pay the interest due last December at any time and that the receipts from this year's sheep operations also insure the payment of interest for the current year.

"Yours very truly,
"ER/B Ernest Ruth, Vice President."

The National Bank of New Mexico collected from the Farmers Development Company on the trust note approximately $3,600 prior to August, 1928, and thereafter approximately $15,000 more, none of which was paid on appellant's debt, although a large amount was paid to the other beneficiaries secured by such note and mortgage, the amount of which appellant does not know, but was sufficient to settle such claims.

"One of the following statements of facts is true, but which one plaintiff does not know, to-wit:

"(1) That in the year 1931 or thereabouts, before six years had expired after the maturity of said note of January 24, 1925, Farmers Development Company either promised in writing signed by it to

pay said debt then remaining unpaid and secured by said mortgage, or the said Company in writing signed by it acknowledged that the said debt was then unpaid,

"Or

"(2) That National Bank of New Mexico, being trustee as aforesaid, grossly and inexcusably neglected its duty as such trustee and permitted the statute of limitations to run against the said debt evidenced by said note and mortgage, to the damage of plaintiff in the sum of $3,684.58 plus interest thereon at the rate of 8% per annum from Dec. 17, 1927 until paid.

"Plaintiff is unable to be more specific with respect to the facts hereinbefore alleged in this paragraph for the reason that the said Liquidating Agent has refused to divulge information in detail relating to the history and present status of the trust and plaintiff knows no other person who can or will furnish the information."

A large amount of taxes has accumulated against the land mortgaged, and such land has deteriorated in value because of lack of care.

" * * * That Farmers Development Company is now, and for years has been insolvent so that there is little possibility of realizing more upon the said debt than the sale of the mortgaged land will pro- duce; that said trustee bank is very nearly liquidated and had in fact reported to the Treasury Department that its debts were paid before this suit was commenced; that plaintiff has no adequate remedy at law and

will, if not given the aid of a court of equity, suffer great and irremediable loss."

The relief prayed for, material to a decision, will be mentioned in the opinion.

■ 1. The court erred in sustaining the demurrer upon the ground of misjoinder of parties as applied to Farmers Development Company. The action is brought to enforce a trust created by it for the benefit of appellant and others, and this company is not only a proper but an indispensable party, particularly so if it is necessary to foreclose the mortgage securing the trust note.

■ 2. The appellee Woodward, as liquidating agent of the National Bank of New Mexico, is not a necessary party, as he is but an agent to liquidate the National Bank of New Mexico, and as such holds title to none of its property. The bank itself being appellee sufficiently protects appellant's interest.

■ 3. Appellee's demurrer to the complaint upon the ground of no consideration for the trust note is without merit. This was an executed voluntary trust, and no consideration was necessary, at least no other than the debts the trust was made to secure or liquidate. Taber v. Bailey, 22 Cal.App. 617, 135 P. 975; 65 C. J. Title "Trusts" § 29. In any event, a pre-existing debt is a sufficient consideration for a mortgage to secure it (Lehrenkrauss et al. v. Bonnell et al., 199 N.Y. 240, 92 N.E. 637), and, while this transaction created a trust, it in effect was also a mortgage

given to secure a pre-existing debt. It is immaterial that, at the time created, the Springer bank, then holder of a participating note, was not a party to the agreement, or that the agreement was at the time unknown to it, or to it and the appellant at the time appellant bought the note, as none of them are necessary to the creation of a trust. Stoehr v. Miller (C.C.A.) 296 F. 414; 65 C. J. Title "Trusts" § 78. Nor is it fatal to appellant's right as a beneficiary that the trust was created before appellant bought the note. It was a trust created by a debtor for the benefit of certain of its creditors, and the essential fact is that it was created to secure the note subsequently transferred to appellant. That note carried its security to subsequent holders. Munson v. Exchange National Bank, 19 Wash. 125, 127, 52 P. 1011. A similar case is Newton Savings Bank v. Howerton, 163 Iowa, 677, 145 N. W. 292, 293. Slonaker had loaned Howerton money on account. Howerton made to the Newton Savings Bank a note and mortgage to secure this debt, in which Slonaker was not mentioned as a party; but the above facts were found by the trial court, and the bank was held to be a trustee for Slonaker. The court therein stated: "It is next urged that there was no consideration for the note, because the Newton Savings Bank, payee, had no interest therein. If there was a consideration as between Howerton and Sloanaker, it was legally competent as between them that the note and mortgage should be taken in the name of any consenting third party. Such third party would thereby hold the paper as trustee for the beneficiary, or it might become the owner of it by contract with the beneficiary. It was not necessary therefore, as a matter of law, that the consideration for the note should move from the Newton Savings Bank to Howerton. It was enough that there was consideration as between Howerton and Sloanaker."

On the question of consideration appellee cites Towle v. Greenberg, 6 N.D. 37, 68 N.W. 82, 83. This was an action brought in claim and delivery for certain personal property owned by respondents and to which Towle claimed the right of possession by virtue of a chattel mortgage executed by respondents to secure a note made to him. The facts as found were as follows: The respondents were indebted to the Union National Bank in the sum of $3,700. A new note in like amount, secured by a chattel mortgage on the disputed property, was made payable to appellant instead of the bank. Appellant claimed that the note was made to him for money to pay off the bank, while the makers of the note testified it was a renewal of their debt to the bank, and they thought they were signing a note payable to the bank; that appellant was not known in the transaction. In any event, the note was immediately indorsed to the bank by Towle without consideration, and held by the bank as one of its assets. The court stated: "The trial court found that respondents never borrowed any money from appellant; that there was no consideration

passing between appellant and respondents to sustain the note; and that appellant was not, and never was, the beneficial owner thereof, or entitled to any beneficial interest therein. * * * Had the appellant actually advanced money with which the old notes were paid and discharged, there would be much more reason in saying that it could make no difference to respondents to whom they paid the note. * * * Moreover, if the old notes were paid,—as they must have been if there was any consideration for the new note,—then they became mere waste paper, and could be of no value as collateral or otherwise. But, as the old notes were not paid, and are still held by the bank, it becomes vitally important to respondents whether or not they shall be compelled to pay a note which, if it represents anything, represents the same indebtedness, to a third person, while their old notes shall remain in the hands of their original creditor. * * * The whole evidence leads us irresistibly to the conclusion that the bank used the name of appellant simply for its own purposes, and in its own interests, and that, if appellant ever held any legal title to the note, such title has been transferred to and is held by the bank."

The cases are not at all alike. Here the bank and Towle each claimed respondents were indebted to him for the same amount of money. There was no claim that the last note was made to secure the first. Under the facts found by the court, there was no consideration, as Towle paid nothing to respondents and the bank claimed they were liable to it on the original notes, clearly a fraudulent attempt to make respondents pay double. The case is not at all in point.

Appellee seems to contend that no facts are alleged from which a trust could be inferred. We quote from their brief: "What Trustee? What kind of a Trustee? Whose Trustee? Appellant assumes that the National Bank of New Mexico was some sort of a Trustee for appellant. If so, the appellant, on May 18, 1925, not only bought a note, but he bought a Trustee along with it; and that without knowledge of any sort of trust arrangement. What appellant bought was a note held by the First National Bank of Springer, made by Farmers Development Company, and guaranteed by M. N. Mikesell. Appellant relied solely in his purchase upon the responsibility of Farmers Development Company and of M. N. Mikesell, so far as his complaint shows. Appellant assumes that there is a trust estate and a Trustee for his benefit, but he alleges no fact and he offers no argument to show the existence of any trust estate, or of any Trustee, for his benefit."

But we think that, when a debtor owing various debts places property, whether a promissory note secured by mortgage, as in this case, or any other property, in the hands of a third person with instructions to use it to settle his debts, an express trust is very definitely established, and, in answer to the query of appellee above, we state that the National Bank of

New Mexico was a trustee of an express trust in personal property, and the beneficiaries were the holders of debts aggregating the amount of the note executed by appellee Farmers Development Company to such bank, mentioned in the letter of such trustee to J. Leahy, attorney for appellant. The letter did not create a trust, but it was a declaration of trust made by the trustee and certainly binding on it.

A somewhat similar question was before this court in Cartwright v. United States B. & T. Co., 23 N.M. 82, 167 P. 436, 448. Cartwright had assigned certain property to the bank to be held and managed for three years for the benefit of his creditors. Some of the questions raised in this case were determined in the Cartwright Case. We believe that the following quotations from this opinion determine questions raised here.

"And while the trusteeship was limited in duration for the period of three years, still during that time the beneficial interest in the property was absolutely beyond the control of the creator of the trust, and, where a trustee has converted the trust estate into money, within the time limited, and is proposing to distribute the same to the beneficiaries of the trust, a director of such corporation trustee cannot be heard to question the validity of the trust, nor will the trust agreement at his instance be given a construction different from that acted upon by the trustee and the parties to the agreement.

"It is argued that the creditors did not accept the trust agreement of February 16, 1911; that they had no notification that the original plan had been abandoned, and the new agreement consummated. This insistence is answered by the rule of law, that:

"'The acceptance by the beneficiary of a trust in his favor is presumed, until he rejects it.' 28 Am.&Eng.Ency. of Law, 895.

"The fact that the instrument in question was invalid as an assignment for the benefit of the creditors, and might have been attacked by any of the creditors, does not aid Muller. The bank, of which Muller was a director, accepted the trusteeship and proceeded to administer the trust; hence Muller is in no position to question the validity of the trust agreement, or to question the right of the creditors to call him to account, if as a director he has violated his duty in dealing with the trust property. * * *

"These creditors, under the terms of the instrument, were the beneficiaries of the trust, and no power was reserved in the creator of the trust to change its directions so given, or to alter, change, or modify the terms and conditions of the agreement, provided the trust was executed within the time limited, viz., within three years. The land was sold within the specified time, and the interests of the beneficiaries became fixed and irrevocable."

When the funds were collected on the trust note, they became the property of the beneficiaries in proportion to the

amount of their respective claims. As quoted in the Cartwright Case, when money was realized by the trustee "the interests of the beneficiaries became fixed and irrevocable."

4. One other question is raised, and that is, As the original debt due appellant was barred by limitation at the time this suit was filed, is a claim against the trustee to the trust fund set aside to pay this debt likewise barred? When the Farmers Development Company created the trust, there was no limitation placed on the time it was to run. The funds realized should have been apportioned among the creditors as collected, or at least within a reasonable time thereafter. In Chaves v. Myer, 13 N. M. 368, 85 P. 233, 235, 6 L.R.A.(N.S.) 793, it was held that trust funds could be followed by the beneficiary so long as they could be traced into other property or the trustee itself could be held liable for such funds where misapplied. The court stated: "It is further urged that the form of mortgage is purely a personal security to Myer, that it could be enforced only by him, and the plaintiffs' redress was by a suit against Myer and his bondsmen. We do not consider this position well founded. The theory upon which the action was brought was that Myer, a trustee, had invested the trust funds in another form of property, to wit, a real estate mortgage, which latter he was holding in his own name in disregard and defiance of his trust. A court of equity will not permit an administrator under such circumstances to dictate terms. He cannot divert trust funds and say to the defrauded cestui que trust: 'Your only remedy is to sue me and secure the satisfaction of your claim by levy, if perchance, I still have the property purchased with your money.' On the contrary, the ancient equitable principle is that the cestui que trust under such circumstances has the option either to hold the trustee personally liable or to follow his money into the property which the trustee has in violation of his trust secured."

From previous decisions of this court we hold that the trustee in this case, by failure to pay over the funds to the beneficiaries as collected, became itself liable to the beneficiaries for the loss occasioned by reason thereof, irrespective of the fact that the note held by appellant has since become barred by limitation. This being an action for an accounting against a trustee by a beneficiary of the trust, we think it is properly brought, and the statute of limitations does not apply.

"It is well settled that as between the trustee and cestui que trust, the statute of limitations does not operate, in cases of an express or direct trust, so long as such trust continues unrepudiated. With respect to an implied trust the rule is ordinarily otherwise, subject, however, to some modifications and exceptions. Independently, however, of the statute of limitations, an accounting may be refused where the party seeking it has been guilty of laches or has allowed his claim to become stale. When the trustee himself at the suit furnishes the facts establishing his duty and the beneficiary's equitable right to an account-

ing he cannot, however, rely on laches as a defense thereto, whatever the time that may have elapsed. Whether the lapse of time is sufficient to bar a recovery must, of necessity, depend on the particular circumstances of each case. The cestui que trust cannot properly be said to have slept on his rights until his trustee has assumed some position of antagonism, or hostility to, or defiance of, his cestui que trust's rights of which he has notice. Although the laches is not sufficient to bar the action, it may, under some circumstances be taken into consideration in computing interest." 65 C.J. title, "Trusts," § 791.

 The question of laches is not raised and possibly could only be raised by answer, as each case of laches depends upon its own facts. Generally the obligation of a trustee to account is not affected by the statute of limitations until a denial or repudiation of the trust. Zebley v. Farmers' Loan & Trust Co., 139 N.Y. 461, 34 N.E. 1067.

 Appellee's motion to make the second amended complaint more definite and certain by "separately stating his causes of action" was not presented or passed upon by the district court, and will not, therefore, be considered here.

The cause will be reversed and remanded, with instructions to proceed with the trial of said cause consistent herewith. It is so ordered.

SADLER, C. J., and HUDSPETH, BICKLEY, and ZINN, JJ., concur.

On Motion for Rehearing.

BRICE, Justice.

The order disposing of the case will be reformed to read: "The judgment of the district court will be affirmed in sustaining that ground of the demurrer to the effect that D. E. Woodward, liquidating agent, etc., is not a proper party to the action, and otherwise reversed and remanded, with instructions to proceed with its trial consistent herewith."

A number of questions raised in appellees' brief in chief, but not referred to in the opinion of the court, are reiterated in its brief on motion for rehearing. These questions were all disposed of by the opinion of the court, though not specifically mentioned, and it would be only repetition to review each of the points now urged upon us.

SADLER, C. J., and HUDSPETH, BICKLEY, and ZINN, JJ., concur.