143 P.2d 597

McCALLISTER v. FARMERS DEVELOPMENT CO.

No. 4616.

Supreme Court of New Mexico.

July 13, 1943.

Rehearing Denied Dec. 13, 1943.

H. M. Rodrick, of Raton, for appellant.

H. A. Kiker and Manuel A. Sanchez, both of Santa Fe, for appellee.

PER CURIAM.

Upon consideration of the motion for rehearing, the previous opinion is withdrawn and the following substituted:

MABRY, Justice.

This is a suit to enforce a trust. It was commenced by McCallister, the appellant here, in the year 1934, against the National Bank of New Mexico of Raton, New Mexico, as trustee (then in voluntary liquidation) and against the Farmers Development Company a New Mexico corporation, which theretofore had voluntarily executed and delivered its note and mortgage to the National Bank of New Mexico of Raton as trustee, for the benefit of McCallister and others of its creditors. The district court sustained a demurrer to the complaint and McCallister, refusing to further plead, judgment of dismissal was entered, from which judgment McCallister appealed. The case was reversed and remanded. See McCallister v. Farmer Development Co. et al., 40 N.M. 101, 55 P.2d 657.

While the case was pending in the Supreme Court the trustee wrongfully transferred the trust note and mortgage to a Texas concern and that concern shortly thereafter transferred same to the Farmers Development Company, the creditor of the trust and the maker of the trust note and mortgage.

After the mandate came down from the Supreme Court, McCallister entered into a contract with the original trustee, the National Bank of New Mexico, under which the bank confessed judgment in favor of the plaintiff for some $3,500, the amount it admitted having collected for him, and paid over that amount to McCallister.

The Farmers Development Company, by its amended answer, in the present suit, among other things, set up the contract as a part of its defense, and the plaintiff, in his reply, and in the trial of the case, sought to follow the said trust note and mortgage into the hands of the original donor of the trust, the Farmers Development Company, for the balance owing after settlement with the trustee, on the theory that the donor itself should be held the holder of said note and mortgage in trust for the use and benefit of J. M. McCallister to the extent of the unpaid balance of his claim, after allowing credit for the sums theretofore collected.

On the trial of the case in October, 1940, plaintiff put on his evidence and rested The defendant, Farmers Development Company, elected to put on no evidence and rested. Thereupon the court, after ruling on requested findings of fact and conclusions of law, made its own findings and entered judgment dismissing the suit as to Farmers Development Company, from which judgment this appeal was taken.

Appellant assigns a large number of errors and these are grouped under eight points, but we will notice only those which are decisive, and these may be grouped under two points, as hereinafter shown.

The facts found by the court and not attacked are in substance as follows: Appellant McCallister purchased from the First National Bank of Springer in May, 1925, a note given by appellee, Farmers Development Company, in the sum of $3,684.58; this is referred to in the pleadings and the testimony as a renewal note. That after said renewal note above mentioned had been given and before its said sale and assignment by the First National Bank of Springer, Farmers Development Company executed and delivered to the National Bank of New Mexico as trustee another promissory note for the principal sum of $23,635.92 together with a mortgage on certain lands located in Colfax county to secure the payment thereof; the said trust note and mortgage were given to secure the payment of various items of indebtedness represented by notes, some of which were held by said National Bank of New Mexico· in its individual capacity and some by various other persons including the one in question purchased by appellant from the First National Bank of Springer; that the National Bank of New Mexico accepted the said trust and undertook the execution thereof; that after suit was commenced and while the cause was pending on appeal to the Supreme Court and before it was decided as reported in 40 N.M. 101, 55 P.2d 657, supra, the National Bank of New Mexico sold the trust note and mortgage to the South Plains Lumber Company of Amarillo, Texas, without the knowledge or consent of appellant McCallister; that a short time after South Plains Lumber Company acquired the note and mortgage, it sold, transferred and delivered it to appellee herein, the maker thereof and the original creator of the trust; and that the South Plains Lumber Company itself had notice of the pendency of this suit when it acquired the note and mortgage; over the period of time appellant acknowledges a credit of $884.28 paid to him as interest, and $3,500 paid to him by the National Bank of New Mexico, the original trustee, a short time after this court decided the first appeal. Appellant claims there is still a balance due and unpaid upon the debt evidenced by the note which he holds and which debt is secured by the mortgage so given to the trustee, in the sum of $3,649.96, as of October 1, 1940.

At the time the National Bank of New Mexico, trustee, paid appellant the $3,500 aforementioned, the bank and appellant entered into a certain contract and agreement hereinafter set out by which the bank was itself relieved of all liability present and contingent, which contract, nevertheless, as appellant contends (this being denied by appellee), still left open to appellant the right to pursue his remedy against appellee, the creator of the trust, and the mortgaged property.

Whether or not the said contract was a complete settlement and satisfaction of appellant's claim and therefore a release likewise of the Farmers Development Company, the maker, is one of the principal points presented in this appeal. That is to

say, this particular and a principal point of contention is based upon appellee's claim, which is supported by the trial court's finding, that because of the fact that appellant, having entered into the contract in question with the trustee bank, accepting part payment and thus releasing it, he could not look to appellee company for any balance owing on the debt due him.

Another principal contention of appellee is that the proof offered on behalf of appellant was, in any event, insufficient to support a finding of any exact amount owing and unpaid to appellant. Appellee urges under this last point, that, until appellant has shown with substantial definiteness the amount owing from appellee, the creator of the trust, to appellant, he is not entitled to a decree of foreclosure of the trust mortgage or to any other relief within the issues.

Notwithstanding the numerous assignments of error, grouped under eight points, when we have settled the two questions just mentioned we have in substance determined the answer to the controlling questions raised in this appeal.

The pertinent parts of the contract between McCallister and the trustee bank were executed in 1940 and read as follows:

"Whereas, in view of a decision of the Supreme Court on appeal in said cause, second party acknowledges liability to first party (J. M. McCallister) as trustee, for collections made upon the promissory note of the Farmers Development Company, one of the defendants in said cause, in the actual and agreed sum of Thirty-five Hundred Dollars; * * * now, therefore

"In consideration of the premises, of the sum of one dollar to each of said parties by the other paid, receipt whereof is hereby acknowledged, and of the stipulations, covenants, payments and promises hereinafter expressed, it is hereby mutually agreed by and between the parties hereto as follows, to-wit:

"First: The party of the second part shall, in an appropriate manner, confess judgment in favor of the party of the first part in the said suit hereinbefore referred to, in the sum of $3,500.00, and shall do the same by filing appropriate papers in that cause and do the same at the same time that the party of the first part accepts the conveyances heretofore and hereinafter mentioned. * * *

"Eighth: While this settlement between the parties hereto shall be, and is intended to be, a complete settlement of all demands of the party of the first part against the party of the second part of all matters involved in the said suit, it is not intended to cut off any right the party of the first part may have or claim against Farmers Development Company to any additional relief on account of the transactions set forth in his second amended complaint in said pending suit. The sale and assignment of the notes and mortgages involved in said pending suit, or renewals thereof, to South Plains Lumber Company or to some other person or persons and the acquiring or at-

tempted settlement thereof by Farmers Development Company or some other person or persons, at a later time, are not taken into consideration in this settlement, the party of the first part expressly refusing to ratify or agree to any such attempted sales, assignments, or settlements, but releasing National Bank of New Mexico from any and all further liability on account thereof, and from any and all liability on account of any and all collections and credits upon said promissory note of Farmers Development Company set up in the first party's complaint, which collections or credits have been made or given by the second party as trustee for first party and other persons thereunder, hereby electing to look to Farmers Development Company and such other persons as he may be advised for the balance he claims to be justly due to him on said notes and mortgage and the debt evidenced thereby. No part of the consideration for this contract consists or has to do with the proceeds of any such sales, assignments, or attempted settlements, nor does anything done in connection therewith have anything to do with the same, it being understood that the transfer by second party to first party of the property above described and the compliance with the other terms and provisions of this contract will operate as a complete settlement and discharge of any and all liability of second party to first party, either as trustee or otherwise. * * *

"Ninth: It is understood that the party of the second part is not waiving or releasing any right it may have, if any, to recoup itself for property or monies paid to second party hereunder, to the extent of the said judgment, against said Farmers Development Company."

It seems to be the contention of appellee that when appellant elected to settle with the trustee for that portion of the amount owing to him and which had been by the trustee collected, and after appellant learned the trust property had been unlawfully sold, instead of following the trust property, as he might have done, appellant foreclosed himself of all other right; while appellant contends that since any settlement made with the trustee was only for the money such trustee had theretofore received on account of the trust and on account and for the benefit of appellant, all as reflected by the agreement with the trustee, he (appellant) still may, under the circumstances of this case, look for any balance owing him to the maker of the trust note and mortgage into whose hands these instruments have now returned still burdened with the unextinguished obligation arising out of the original trust transaction. So, upon this particular issue we are called upon to decide whether McCallister, by making the contract with the National Bank of New Mexico, the original trustee, closed the door to further relief for himself.

As we analyze the contract, appellant clearly reserved the right to look for further satisfaction to appellee, Farmers Development Company; it was not

intended by the settlement to cut off any right he might have against appellee. The contract is a clear negation of any intention to elect to look to the trustee and abandon the mortgage security; and that which is shown to have been done under the contract constitutes no election. The trial court misconstrued the contract.

It cannot be said that appellee was entitled to any formal or detailed accounting at the hands of the trustee, in this suit. The accounting originally sought by appellant, as cestui que trust, was merely an incident to enforcement of the trust. Manifestly appellant sought no accounting against appellee, and sought none for its benefit. The necessity for an accounting ceased when appellant was able to establish the indebtedness owing him, upon any fair method of computation that seemed satisfactory to him and which would meet the requirements of the case as to a prima facie showing. Appellee Farmers Development Company, after all, had only one interest in the suit brought to enforce the trust, and that was to see that it had received credit for all moneys paid upon its obligation. It could not be heard to say that appellant and the trustee could not settle out of court accounts fairly arrived at, upon full and fair disclosures. Ingram et al. v. Lewis et al., 10 Cir., 37 F.2d 259, 70 A.L.R. 702; 26 R.C.L. 1376. No such stipulation and contract between the trustee and appellant would bind appellee, and it could not complain.

Upon the point whether appellant as plaintiff below has failed to establish the indebtedness owing him and arising out of the trust transaction, the trial court was likewise in error in holding that appellant had failed to establish this fact with sufficient certainty. It is conceded that foreclosure cannot be ordered until the amount of indebtedness sued upon and so secured by the mortgage is determined. Young et al. v. Vail et al., 29 N.M. 324, 222 P. 912, 34 A.L.R. 980. The question here is whether the proof was sufficient to reasonably establish the amount of the indebtedness; and, in one sense, this depends upon the application of the ordinary rules of proof where the party defendant pleads and relies upon payment as a defense; and in the alternative, we have the further question whether plaintiff did, by his proof, sufficiently establish his claim, nevertheless.

Appellee, in its pleadings, admitted the execution of the McCallister note and also the trust note and mortgage made to secure it, but denied there was any consideration for the inclusion of the McCallister indebtedness in the trust note. It also pleaded the payment "of all obligations ever assumed by it on account of the execution of any and all the notes mentioned in plaintiff's complaint and that the said note (being paid) for $23,635.92 is now in the possession of this defendant." It seems there can be involved only two defenses under this point, viz., (1) that there was no consideration for inclusion of the McCallister item in the trust note and mort-

gage, and (2) the affirmative defense of payment thereof, of all "obligations ever assumed by it" on account of the said trust note.

The defense of lack of consideration is disposed of by the court's finding of fact number 4 which is against appellee's contention. And the plea of payment of the whole of the twenty-three thousand dollar trust note, including the McCallister item covered thereby, was clearly an affirmative defense which must be pleaded and proved. Tryone Knitting Mills v. Rubin, 27 N.M. 324, 201 P. 867; 21 R.C.L. 115. It is difficult to understand how appellee can escape this burden and consistently insist that the cestui que trust must be denied relief in foreclosure of the trust mortgage simply because he had not himself definitely and with sufficient certainty shown affirmatively the exact amount, and dates, of payments to the trustee by appellee. The position of appellee seems to be that because of the nature of the suit, being one commenced by cestui que trust to enforce the trust and foreclosure of the mortgage wherein, incidentally, discovery and accounting at the hands of the trustee might also be required, that the ordinary rule whereby the burden would rest upon the party pleading payment does not apply, but the burden of showing the balance remaining unpaid on the trust note and mortgage rests, rather, upon plaintiff-appellant.

We can see no place here for the application of any such rule. Appellant did, however, as we view the evidence, and as is hereinafter shown, in order to eliminate, by showing payment of all items that went into the trust mortgage except the McCallister item so that it would appear that all other indebtedness secured by the trust mortgage had been paid, establish the fact that he was entitled to recover all benefits from the security involved. Whether he also established the exact amount paid in by appellee to the trustee bank, we do not decide, although it might be said that he made every reasonable effort, under the circumstances, so to do.

We know of no peculiar rule as to the burden of proof when applied to a suit to foreclose a mortgage securing a trust note. It is like that to be applied in other cases where plaintiff alleges an indebtedness and the defendant relies upon payment thereof; and, the fact that plaintiff, in his complaint, alleges nonpayment does not relieve the party relying upon the payment as a defense of the burden of proving it. 21 R.C.L. 119.

"Proceedings to establish and enforce trusts are, generally speaking, governed by the usual rules as to presumptions and burden of proof, and the admissibility, weight and sufficiency of evidence applicable in other civil actions." 26 R.C.L. 1368.

"Possession of the notes by the payee, or his personal representative, or the plaintiff, is prima facie evidence of nonpayment."

Mann v. Whitely, 36 N.M. 1, 6 P.2d 468, 470.

■ Appellant did not need to have an accounting to ascertain the amount of the indebtedness owing, even if it could be said that in view of the pleadings he was nevertheless required to go forward with proof. After showing the making and execution of the note, that it was unsatisfied and still in the hands of the trustee for his benefit (although the "trustee" holding the instruments at the time was the creator of the trust itself, which was unlawfully in possession of the note and mortgage, prematurely and before full payment) the indebtedness was affirmatively established.

Appellee cannot, under the circumstances of this case, be heard to object that an accounting would have been necessary to establish the indebtedness, or that this was in fact a suit in accounting. When appellant established, as we hold he did, that the total indebtedness growing out of the trust transaction, excepting as to that part owing him, had been fully paid, and proved the amount still owing him upon this item, he had made his case, certainly, and a decree of foreclosure should have been entered.

Appellant established the amounts paid him and the dates of payment. Appellee does not dispute this fact, apparently; and it concedes, moreover, that there is evidence of payment of the so-called customers' notes, covering other items than the claim of appellant; but it urges that, since the exact time of payment upon such items other than the claim of McCallister is not shown, there is no exact method of computing the total payments, considering interest as an item which must be reckoned with.

. ■ It has been suggested that inasmuch as plaintiff, by paragraph XI of his first amended complaint, alleges that approximately $18,600 had been paid by defendant to the said trustee bank upon the said trust note, plaintiff is thus bound by such admission and has the burden of showing the exact amount paid and the time of all payments; that he himself must thus definitely establish the amount of principal and interest owing upon said trust note, in order to establish the indebtedness owing him, and that this he did not do. Appellee overlooks the fact that this allegation, based upon information and belief, states only an approximate amount which plaintiff is informed and believes has been paid and not fully accounted for.

It is clear that plaintiff does not know the exact amount collected, since he uses the word "approximately" in fixing the amount. He says he is "unable to state the details of the said collection or the distribution thereof", this being information properly chargeable to appellee.

Moreover, we have appellee's answer stating "affirmatively" that it has "paid and discharged all obligations assumed by it on account of the said note of $23,635.92, and all other obligations which it ever

owed, to the National Bank of New Mexico. * * * "

So whatever may be said as to the indefinite allegation of appellant of the approximate amount paid by appellee, the affirmative plea of payment, under the circumstances, we hold, completely neutralizes the force and effect which appellee would give to the indefinite allegation in respect to payment found in appellant's complaint. Appellee's argument in support of its contention that its plea of payment was a qualified, as distinguished from an unconditional, one does not impress us as sound.

■ It was obligatory upon plaintiff to allege some amount collected by the trustee and due him before he would be entitled to an accounting from it. 1 Am.Jur. 305, par. 60; Oskaloosa Savings Bank v. Mahaska County State Bank, 205 Iowa 1351, 219 N.W. 530, 60 A.L.R. 1204.

■ In order that a recital or statement in a pleading may be given force and effect as an admission of fact, it must, of course, amount to such. 41 Am.Jur. 435, par. 201; Hamlen v. Rednalloh Co. et al., 291 Mass. 119, 197 N.E. 149, 99 A.L.R. 1230; Davis v. Minnesota Baptist Convention, 45 Wyo. 148, 16 P.2d 48, 50.

"A pleader is not, however, concluded beyond the reasonable import of his pleading, especially where averments or denials appear in the answer which are inconsistent with the supposed admission." 21 R.C.L. 562, par. 121.

In the Wyoming case above cited the court held that it was not the intention on the part of the pleader against whom an admission was charged to make as broad an admission as was claimed for it. And, we find this further significant language in that case: "It would seem reasonably plain, too, from the conduct of their case by the plaintiffs on the trial, that they themselves considered that no such admission had been made. * * * In other words, they tried the case without asserting then any claim of admissions in the answer of the defendant last named * * *. Under such circumstances, may they now urge their claim of admissions in the answer aforesaid to relieve them of any failure to make the complete proof the rule aforesaid required? We do not think so, under the weight of authority as we find it."

In the case of Caldwell v. Drummond et al., 127 Iowa 134, 102 N.W. 842, 843, appellant was denied the right to rely upon what otherwise would have been held an admission in the pleading, because of the theory upon which the case was tried. It was there pointed out that it was then too late to take advantage of such admission in view of the fact that the trial court "proceeded as if no admission had been made. The appellant by his pleadings and by his actions clearly waived the admission; he made no request for a judgment on the pleadings, nor any objections to the introduction of the evidence relating to the issue he had tendered by his answer, * * and thereby impliedly consented to try the

issue raised by such pleadings. * * *", the court held. See Standard Motor Co. v. Shockey, 139 Md. 127, 114 A. 869, 871, and Williams v. McWhorter, 30 Wyo. 229, 218 P. 791.·

We cannot escape the conclusion that able counsel for appellee, in the trial of the case below, was not seriously relying upon an admission of payment to the trustee, as indeed he could not properly rely. Appellant was in no position to ascertain the amounts paid from the books of either the trustee or appellee; they were never in his possession and, as was subsequently disclosed at the trial, the books of both the trustee and appellee touching such transaction had been destroyed by fire. And, when appellant·sought to ascertain what amounts had been paid the trustee he was invariably met by objection that appellant, by endeavoring to show collections made on account of the note in question by the trustee bank, was endeavoring to go into an accounting which could not now be permitted since he and the trustee had previously settled and adjusted all matters. This character of objection on the part of appellee appears to permeate the whole case and was urged nearly a dozen times.

It does not appear that appellee was seriously relying upon the complaint being an unequivocal admission, as indeed he could not have so relied. Even if it might be said that appellant would be bound by his allegation that approximately $18,600 had been paid, it could not be said that he would be bound to show the dates of the payments when by his complaint he expressly disclaims any knowledge thereof. So, even were appellant to be burdened with this admission, it could not affect the result here proposed.

This point might be more easily disposed of if we pose this query and give the answer: Could a litigant have secured judgment on like pleadings, and have adjudicated a credit, based upon the alleged admission that *approximately* $18,600 had been collected by the trustee bank? Obviously he could not.

Under the circumstances of this case, appellee, itself, having made all payments involved, either had the information touching same, or as trustee ex maleficio is properly chargeable with such information. It, appellee, with the trust, as to appellant, unsatisfied, had, with notice of all infirmities which attached by such transaction, come into possession of the note and security, and as the settlor of the trust, will be declared to be a trustee burdened with all the consequences of the trust. Perry on Trusts, Vol. 2, 7th Ed., 132, § 104. It must, itself, honestly and fairly disclose the manner of administering the trust.

It was said in Ledford v. Hubbard, 219 Ky. 9, 292 S.W. 345, 348: " 'In the administration of justice it is often wise to place the burden of producing evidence on the party best able to sustain it, and ambiguity, concealment, or evasion react with peculiar force on a pleader who asserts a fact and

fails to produce the evidence, which if his assertion were true, would be in his possession. Hence it is very generally held that where the party who has not the general burden of proof possesses positive and complete knowledge concerning the existence of facts which the party having that burden is called upon to negative, or where for any reason the evidence to prove a fact is chiefly, if not entirely, within his control, the burden rests on him to produce the evidence.' * * * ", citing from 22 C. J., p. 81, and other authority.

▮ It is wholly illogical to say that appellant, who did not have possession of either the trustee's or appellee's books and records, which would have been the best evidence of the fact, and time, of payment, could be expected to have assumed such burden of proof. The burden of showing payment rested upon the appellee; it was affirmatively so pleaded; and any finding or conclusion by the court that appellant had not shown any amount due him for which foreclosure should be ordered was erroneous.

▮ Some point might be made of the fact that appellant, as plaintiff below, did not himself have possession of the note or mortgage on which he was seeking satisfaction; but that would not affect the rule. He was placed at some disadvantage because the trustee had wrongfully sold and transferred these evidences of indebtedness so that they came back, prematurely, into the hands of the maker thereof. But this was through no fault of appellant, the bene-

ficiary under the trust. It was as though appellant did have possession.

We hold the trial court erred in so casting the burden of proving the balance due and unpaid upon the obligation upon which appellant's cause rested, and likewise in holding that appellant had not made out his case. The judgment should have been for appellant in the amount claimed.

For the foregoing reasons the cause is reversed and remanded with direction to the trial court to set aside its judgment heretofore made and entered and enter judgment and decree in foreclosure for appellant in the sum sued upon, all in accordance with this opinion, and, it is so ordered.

SADLER, C. J., and BICKLEY, J., concur.

THREET, J., did not participate.

BRICE, Justice (concurring specially).

The appellee's theory at the trial of the case was that appellant's settlement with the trustee was a cancellation of all his rights in the trust. I agree that this is not correct; that his reservation of the right to follow the trust property into the hands of the appellee was preserved.

Now in this court appellee asserts that the case was one for an accounting, and that the burden was upon appellant to determine the amount due him and that he failed to do so.

In buying the trust property the appellee itself became a trustee ex maleficio, Elliott v. Landis Machine Co., 236 Mo. 546, 139 S.W. 356; Whitcomb v. Carpenter, 134 Iowa 227, 111 N.W. 825, 10 L.R.A.,N.S., 928, and as such trustee and as defendant pleading payment, the burden of proof was upon it. If we assume that the undenied allegation in the appellant's amended complaint to the effect that approximately $18,600 had been paid upon the note was binding as an allegation of fact, it will not change the result. This allegation was unnecessary to an accounting, but we will assume that it was proof that this sum of money was actually paid prior to the filing of this suit in 1934. The interest of appellant in the trust note was $3,684.58, and the interests of other beneficiaries aggregated $19,951.34. It may be assumed that, as the trustee paid the other beneficiaries in full, such payments were made as the money was received. We know that none of it was paid to appellant. The payments were not enough to pay off the other beneficiaries, so that interest on the $18,600 ceased so far as appellee was concerned.

Appellant's interest on his part of the trust notes would have continued until payment was made. Appellant received nothing before his settlement with the trustee. Whether this money had just been collected, or had been previously collected; whether it included any interest or only principal, is not disclosed by the evidence.

While the burden was upon appellee to prove payment after the appellant had established the original debt, it introduced no testimony. The appellant attempted to prove the items paid and the dates of payment, but every question asked upon the subject met appellant's objections, some of which were sustained and some overruled. I think appellant cannot complain that the proof of the amount due was not exact.

The appellant should have had judgment for the balance due on his interest in the trust note after allowing a credit of $3,500 on the date paid. This is a matter of calculation to be made by the district court upon remand. We are not authorized to make this finding of fact.

The cause should be remanded with instructions to calculate the amount due appellant after allowing the credit of $3,500 as of the date paid, and enter its decree accordingly.